426 So.2d 1186 (1983)
Peter G. MAKRIS, Appellant,
v.
John G.E. WILLIAMS, et al., Appellees.
John G.E. WILLIAMS, Cross Appellant,
v.
Peter G. MAKRIS, John Downey, et al., Cross Appellees.
No. 81-254.
District Court of Appeal of Florida, Fourth District.
February 9, 1983.
*1187 L.M. Taylor and Steven J. Greenwald of L.M. Taylor, Lawyers, North Palm Beach, for appellant/cross appellee-Makris.
Kent Huffman of Law Offices of Paul Thibadeau, Palm Beach, for appellee/cross appellant-Williams.
HURLEY, Judge.
The two principal issues on appeal, broadly stated, are (1) whether the trial court correctly interpreted the provisions of a real estate contract and (2) whether the trial court correctly dismissed a respondeat superior claim. We have concluded that the trial judge correctly interpreted the contract, but that he erred in dismissing the vicarious liability claim.
This dispute concerns a real estate contract between the buyer Makris and the seller Williams. The form contract, entitled "Deposit Receipt and Contract for Sale and Purchase," provided that Makris would purchase a residential property for $465,000 and provided for a $40,000 down payment to be paid as follows:
Deposit to be held in trust by [Makris' attorney] L.M. Taylor, Lawyers  Trust Account $10,000 ... Buyer agrees to place into the escrow account of L.M. Taylor, Attorney an additional $30,000 payable as follows:

 On/Before Nov. 29, 1978: $10,000.
 On/Before Dec. 29, 1978: $20,000.

The contract also contained the following liquidated damages clause:
9. DEFAULT BY BUYER: If buyer fails to perform any of the covenants of this contract, all money paid pursuant to this contract by buyer as aforesaid shall be retained by or for the account of the seller as consideration for the execution of this contract and as agreed liquidated damages and in full settlement of any claims for damages. [Emphasis added.]
Finally, the contract contained a space for the escrow holder to acknowledge receipt of the initial $10,000 deposit. This space was left blank.
At trial, it was learned that Makris had submitted a prior contract with similar *1188 terms but providing for a lower purchase price and for a $10,000 rather than a $40,000 total deposit. Makris' attorney, L.M. Taylor, had signed the first contract acknowledging receipt of $10,000 in escrow. He admitted at trial, however, that he never actually received the funds. It was also learned that, at the time the second proposed contract was presented to Williams, the absence of the attorney's signature was discussed by Williams, Marion Taylor the listing broker, and Walter Pryor a salesperson working for John Downey another broker. Pryor was presenting the contract on behalf of Makris who did not participate. Marion Taylor and Pryor assured Williams that the absence of the attorney's signature was not a problem because Makris' attorney had previously acknowledged receipt of the funds and because there was no reason to believe that the funds were not still in the escrow account, especially because the acceptance period expressed in the first proposed contract, which the attorney signed, had not expired.
More than a month after the second proposed contract was executed, and after Makris had visited Williams and expressed his happiness with the deal, Williams learned that Makris' attorney had never actually received any deposit funds. When it became apparent that Makris would not close the deal, Williams filed suit seeking $40,000 as liquidated damages and damages for fraud.
Williams also sued Marion Taylor and Walter Pryor, the two real estate persons handling the deal, for fraud and breach of their fiduciary duties. In addition, he sued Pryor's employer John Downey under the doctrine of respondeat superior.
At the close of the plaintiff's case, the trial court granted involuntary dismissals of the claims against Marion Taylor and John Downey. The judge found that there was insufficient evidence of wrongdoing by them. At the close of the trial, the court entered judgment in favor of Williams and against Makris and Pryor for $10,000. Makris appealed; Williams cross appealed; Downey, a cross appellee, failed to file a brief; Pryor and Marion Taylor were not involved in the appeal. Of the points raised by the parties, only a few warrant discussion.

The Contract Terms
At the outset, we note a general rule that governs the recovery of liquidated damages under contract default provisions like those in the present case: "When a real estate contract provides that if a sale is not closed because of the fault of the buyer, the deposit paid under the contract is to be retained by the seller, the seller cannot recover a deposit not actually made." Stewart v. Mehrlust, 409 So.2d 1085, 1086 (Fla. 2d DCA 1982); Campbell v. Salman, 384 So.2d 1331 (Fla. 3d DCA 1980).
Applying this general rule, we can quickly dispose of Williams' claim that the trial court should have awarded the full $40,000 down payment as liquidated damages. The evidence was unequivocal that the full deposit had not been paid. Therefore, under the terms of liquidated damages clause, the full deposit could not be retained.
Makris' claim that the trial court erred in awarding Williams $10,000 presents a more difficult issue. If we were to blindly apply the general rule, we would have to conclude that the trial court erred because the evidence established that Makris never actually paid a deposit. Notwithstanding the general rule, we believe that the terms of the liquidated damages clause cannot prevent Williams from recovering the initial $10,000 deposit. The trial court, as the fact-finder, could have reasonably concluded that Makris represented that the $10,000 had already been paid into an escrow account on Williams' behalf when Williams executed the contract. Thus, the failure to pay the $10,000 constituted more than a mere breach of an executory promise which would be covered by the default clause. In essence, the judgment merely allows Williams to reach funds that Makris and his attorney had represented as being in escrow. Makris cannot escape this liability *1189 merely because his attorney was willing to sign a receipt before actually receiving the funds.
In reaching this conclusion, we start with the contract provision governing the deposit; it provides:
Deposit to be held in trust by [Makris' attorney] L.M. Taylor, Lawyer-Trust Account $10,000 ... Buyer agrees to place into escrow account of L.M. Taylor, Attorney an additional $30,000 payable as follows:
On/Before Nov. 29, 1978: $10,000. On/Before Dec. 29, 1978: $20,000.
In light of the facts adduced at trial, and in light of the general rule that ambiguities in contracts are construed against the drafting party, the trial court could reasonably have interpreted the deposit provision as a representation that $10,000 had already been put into escrow. Thus, those moneys had been "paid" into escrow within the meaning of the default clause, and the buyer could sue to retain those funds.

Respondeat Superior
Our Supreme Court recently summarized the rules governing vicarious liability; it said:
An employer is vicariously liable for compensatory damages resulting from the negligent acts of employees committed within the scope of their employment even if the employer is without fault. This is based on the long-recognized public policy that victims injured by the negligence of employees acting within the scope of their employment should be compensated even though it means placing vicarious liability on an innocent employer.
Mercury Motors Express, Inc. v. Smith, 393 So.2d 545, 549 (Fla. 1981).
In the present case, the trial court granted an involuntary dismissal of the respondeat superior claim at the close of the plaintiff's case. See Fla.R.Civ.P. 1.420(b). The trial court did so on the ground that the plaintiff had failed to introduce sufficient evidence to establish a prima facie case of employer wrongdoing. This rationale was erroneous because employer fault is not an element of respondeat superior claims for compensatory damages.
We note that the employee was ultimately found liable and a judgment entered against him, which he did not appeal. We have reviewed the record and found evidence that his liability resulted from acts and omissions that occurred within the scope of his employment. Therefore, we must reverse for a new trial of the respondeat superior claim.

Summary
We affirm the judgment in all regards except that we remand for a new trial on the respondeat superior claim.
LETTS, C.J., and HERSEY, J., concur.