PER CURIAM:
 

 Jeanette Tavormina, as the trustee for the Alchar Hardware Company, Inc. (Alc-har) and the Knight & Wall Company, Inc. (Knight), appeals from an order of the United States District Court for the Southern District of Florida affirming a decision by the bankruptcy court dismissing a variety of claims arising out of the alleged breaches of two contracts involving the sale of real estate. We affirm in part and reverse in part.
 

 On December 16, 1982, Fir, Inc. (Fir) offered to buy approximately 24 acres of land from Alchar and Knight, two chapter eleven debtors, for $1,995,000.00. In an “Order Confirming Sale of Real Property and/or Authorizing Trustee to Enter Into Executory Contract for the Sale of Land,” the bankruptcy court authorized Tavormi-na, as the trustee of the debtors, to sell the property provided that Fir deposit $50,-000.00 with Tavormina and that the transaction be closed no later than February 18, 1983.
 

 Lawrence Lyman, an attorney retained by Fir, gave Tavormina a personal check for $50,000.00 which was dishonored by the bank for insufficient funds. On February 9, 1983, Fir assigned its interest in the sales contract to Elias Hakim. Hakim met with Arthur Weitzner, Tavormina’s attorney, and both signed a “Stipulation for Modification of Order Confirming Sale of Property” (“stipulation”) which modified the original sales agreement, in part by providing for a sixty-day extension of the February 18, 1983 deadline in exchange for a $50,000.00 deposit, half of which Hakim paid in advance.
 

 Tavormina then filed a “Trustee’s Motion to Modify Order Confirming Sale” in the bankruptcy court. Before the motion could be heard, however, Hakim advised Weitz-ner that he no longer wanted to buy the property and asked for the return of his $25,000.00 advance deposit. Tavormina responded by filing a “Motion to Declare Purchaser and Assignee in Default” in the bankruptcy court. After a hearing, the bankruptcy court issued an “Order Revo-cating Order Confirming Sale and Related Matters” which authorized Tavormina to resell the property to another party and expressly reserved the determination of the rights and liabilities of Tavormina, Fir, Lyman and Hakim for a separate trial.
 

 Tavormina sued Fir, Lyman and Hakim in the bankruptcy court seeking to recover $50,000.00 from Fir and Lyman as well as a determination of rights as to Hakim’s $25,-000.00 deposit.
 
 [1]
 
 Fir and Lyman filed a counterclaim against Tavormina and Weitz-ner seeking rescission of the sales agreement, damages for fraud and misrepresentation and a finding that Tavormina and Weitzner were in contempt of court. Hak-im counterclaimed against Tavormina, asking for declaratory relief and damages for breach of contract and misrepresentation, and filed a cross-claim against Fir and Lyman for damages.
 

 After the claim of Fir and Lyman against Weitzner was stricken, the case proceeded to trial in the bankruptcy court. Although the court found that a valid contract existed between Fir and Tavormina and that there was no basis for its rescission, it reasoned that Tavormina was not entitled to recover Fir’s $50,000.00 deposit because it was funded with a bad check and, therefore, had not been “paid” within the meaning of the liquidated damages clause in the sales contract. In addition, the court construed the stipulation between Tavormina and Hakim to be subject to approval by the bankruptcy court. According to the court, because Hakim withdrew his offer to buy before court approval was obtained, the liquidated damages clause in the stipulation was unenforceable. The court dismissed all the claims with prejudice and ordered Tavormina to return Hakim’s $25,000.00 deposit. 33 B.R. 230. The district court affirmed the bankruptcy court’s judgment, holding that 1) Fir was not indebted under the sales contract because Lyman was not authorized to issue his check on its behalf,
 
 *1533
 
 2) Lyman was not personally liable on the $50,000.00 bad check since it was “not tendered for the purpose of establishing consideration,” and 3) Hakim was not bound by the stipulation because it was never approved by the bankruptcy court.
 

 1.
 
 Liability of Fir
 

 The bankruptcy court held that Lyman was authorized to present the $50,-000.00 check on behalf of Fir, finding that there was no basis for rescinding the contract between Fir and the debtors and that the bad check was tendered by Lyman “on behalf of his client, Fir.” Record, vol. 1 at 134-35. This finding must be upheld unless it is clearly erroneous.
 
 Matter of Multiponics, Inc.,
 
 622 F.2d 709, 713 (5th Cir.1980).
 
 [2]
 
 The record reveals that Lyman was retained as Fir’s attorney, was its president and owner and stood to gain a “commission” from the company if the transaction was completed. Based on these facts and a review of the entire record, we are not left with the requisite “definite and firm” conviction that the bankruptcy court’s factual finding was incorrect. As a result, the district court erred in finding that Lyman was not authorized to tender the check to Tavormina.
 

 Whether Tavormina is entitled to the $50,000.00 legitimately tendered by Lyman on behalf of Fir depends on the interpretation of the term “paid” in the liquidated damages provision of the real estate sales agreement.
 
 See
 
 Record, vol. 1 at 5. The general rule in Florida is that when “a real estate contract provides that if a sale is not closed because of the fault of the buyer [then] the deposit paid under the contract is to be retained by the seller, the seller cannot recover a deposit not actually made.”
 
 Stewart v. Mehrlust,
 
 409 So.2d 1085, 1086 (2d DCA Fla.1982);
 
 see also Campbell v. Salman,
 
 384 So.2d 1331, 1332-33 (3d DCA Fla.1980). In
 
 Makris v. Williams,
 
 426 So.2d 1186 (4th DCA Fla.1983), however, the court held that money is “paid” within the meaning of a liquidated damages clause in a real estate contract when the defaulting buyer represents to the seller that a deposit has been placed in an escrow account for the benefit of the seller notwithstanding the buyer’s failure to actually follow through.
 
 See id.
 
 at 1188-89. In this case, Fir’s tender of a check to Tavormina is a similar representation that the deposit funds are reserved for the seller’s benefit. The fact that the defaulting buyer’s representation in
 
 Makris
 
 was contained in the real estate contract itself whereas Fir’s representation was in the form of a check does not appear to be material.
 
 See, e.g., Westminister Corp. v. Neptune Uranium Corp.,
 
 144 Colo. 281, 355 P.2d 1095, 1097-98 (1960) (dishonored check was a “payment made” within the meaning of a liquidated damages clause). Accordingly, we hold that the district court erroneously affirmed the bankruptcy court’s determination that the $50,000.00 had not been “paid.”
 

 II.
 
 Liability of Lym,an
 

 The debtors next assert that Lyman is personally liable for the $50,000.00 as the drawer of the check. Generally, the drawer of a dishonored check is personally liable to the holder.
 
 See Fla.Stat.
 
 §§ 673.413(2), 673.507(2). However, “[w]ant or failure of consideration is a defense as against any person not having the rights of a holder in due course.”
 
 Id.
 
 § 673.408;
 
 see also id.
 
 § 673.306(3).
 

 The bankruptcy court made no explicit finding of fact concerning whether Lyman received consideration for the check, reasoning only that the “trustee has no cause of action against Lyman, whose bad check was tendered on behalf of his client, Fir, and accepted as such.” Record, vol. 1 at 135. However, it is apparent from the record and undisputed on appeal
 
 [3]
 
 that adequate consideration was tendered to Lyman in the form of Tavormina’s forbearance from declaring Fir in default.
 
 See,
 
 
 *1534
 

 e.g.,
 
 Record, vol. 2 at 81-82, 180-84. Under Florida law, a check is presumed to have been issued for valuable consideration.
 
 See City of Valparaiso v. Long,
 
 141 So.2d 334, 335 (1st DCA Fla.1962). Because of Lyman’s financial interest in Fir and the transaction, it is sufficient that the benefit flow to Fir instead of directly to him,
 
 see Equilease Corp. v. Williams Steel Industries, Inc.,
 
 452 So.2d 40, 41-42 (5th DCA Fla.),
 
 cert. denied,
 
 459 So.2d 1042 (Fla.1984), and detriment to a promisee, such as forbearance to enforce a legal right, constitutes adequate consideration.
 
 See Fontainbleau Hotel Corp. v. Crossman,
 
 323 F.2d 937, 942 (5th Cir.1963). Consequently, the district court erred in affirming the judgment of the bankruptcy court for this reason.
 

 III.
 
 Liability of Hakim
 

 Tavormina next urges that the debtors are entitled to retain Hakim’s $25,000.00 deposit pursuant to the liquidated damages clause in the stipulation. The stipulation, however, provides “[t]hat the parties agree that the effectiveness of this agreement so far as the trustee is concerned is contingent upon approval of the bankruptcy court.” Record, vol. 1 at 15-16. Both the bankruptcy court and the district court relied on this provision in holding that the lack of court approval of the stipulation rendered its liquidated damages clause unenforceable.
 

 Tavormina first seems to argue that court approval is not required to enforce a liquidated damages clause, relying on
 
 In re Sombrero Reef Club, Inc.,
 
 15 B.R. 177 (Bankr.S.D.Fla.1981). However, not only is this position contrary to the plain language of the stipulation, but
 
 Sombrero Reef
 
 is inapposite because that decision was based on a court-approved contract.
 

 The stipulation also stated “that the parties hereto agree to remain bound under the letter and spirit of the agreement until said approval can be obtained.” Record, vol. 1 at 16. Tavormina urges that this language created a separate enforceable option contract by which she agreed to forego default proceedings on the original sales contract pending court approval of the modification agreement. According to Tavormina, the liquidated damages clause is applicable by reason of the independent option agreement.
 

 The bankruptcy court, however, construed the provisions in the stipulation to be “subject to this Court’s approval.” Record, vol. 1 at 135. Interpretations of contracts by a trier of fact are reviewable under the clearly erroneous standard.
 
 See, e.g., Medtronic, Inc. v. Janss,
 
 729 F.2d 1395, 1399-1400 (11th Cir.1984). In view of the contradiction in the stipulation between the phrases “the effectiveness of the agreement ... is contingent upon approval” and “the parties ... remain bound under the ... agreement until ... approval can be obtained,” as well as our examination of the record as a whole, we cannot say that the bankruptcy court’s construction of the stipulation was clearly erroneous.
 
 [4]
 

 Finally, Tavormina contends that Hakim is estopped from asserting the invalidity of the stipulation because he ratified the agreement by tendering his deposit, attempting to lease the property and allegedly suing for damages under the stipulation. Under Florida law, when a party has alternative, inconsistent remedies, his choice of one remedy precludes further pursuit of the second. For example, a party suing for breach of contract must select the remedy of either damages or rescission.
 
 E.g., Hustad v. Edwin K. Williams & Co.—East,
 
 321 So.2d 601 (4th DCA Fla.1975),
 
 cert. denied,
 
 333 So.2d 41 (Fla.1976). The purpose of this election rule is to prevent double recoveries for the same wrong.
 
 See U.S. v. Weiss Pollution Control Corp.,
 
 532 F.2d 1009, 1012 (5th Cir.1976).
 

 In this case, Hakim, by tendering his partial deposit of $25,000.00 and relying
 
 *1535
 
 on anticipated court approval by arranging for future leasing of the property, acted consistently with the conditional nature of the stipulation; his conduct does not give rise to an estoppel. Moreover, we do not read his counterclaims as asserting positions inconsistent with his stance that the stipulation is void. Count one seeks only the return of his $25,000.00 deposit and count two requests a declaration that the stipulation is void. Count three is based on Weitzner’s alleged misrepresentations and primarily seeks the return of the deposit. Although the counterclaim also asks for “lost profits,” this request is apparently based on the supposed breach of the original sales contract rather than the stipulation. Nowhere does he appear to take the position that the stipulation is a valid, enforceable contract. We conclude that the bankruptcy court correctly determined that Tavormina was not entitled to retain Hak-im’s $25,000.00 deposit.
 

 The judgment of the district court is AFFIRMED in part and REVERSED in part.
 

 [1]
 

 . There is no dispute that Tavormina is entitled to a separate $100.00 deposit from Fir.
 

 [2]
 

 . In
 
 Bonner v. City of Prichard,
 
 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.
 

 [3]
 

 . Neither Fir nor Lyman filed briefs in this case.
 

 [4]
 

 . Because we hold that the parties intended that the liquidated damages clause be unenforceable in the absence of court approval we do not reach the issues of whether any separate option agreement is supported by adequate consideration or requires court approval as a matter of law.